UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GASS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:11-1584 |
| v. | : | (MANNION, D.J.[1]) |
| | | (SCHWAB, M.J.) |
| GEORGE C. MURPHY and JASON DUBERNAS, | : | |
| | : | |
| Defendants | | |

**MEMORANDUM**

Pending before the court is the report and recommendation of Judge Schwab, (Doc. No. 91), recommending that the district court grant defendants' motion for summary judgment. (Doc. No. 69; Doc. No. 73). The court agrees with the report and recommendation in that plaintiff has failed to meet his burden of demonstrating the existence of a genuine issue of material fact in opposing the motion for summary judgment. Therefore, after a *de novo* review of those portions of the report and recommendation to which plaintiff objects, the court will **ADOPT** the report and recommendation **IN ITS ENTIRETY** and **GRANT** defendants' motion for summary judgment.

**I.  BACKGROUND**

The plaintiff did not file a brief or statement of facts in opposition to the defendants' motion for summary judgment pursuant to Local Rule 56.1, so he

---

[1]This case was originally assigned to the Honorable A. Richard Caputo, but was reassigned to the undersigned by verbal order on January 4, 2013.

is deemed to have admitted those facts.[2] On May 17, 2010, the plaintiff was driving his fiance's Chevrolet Impala on Interstate 380 through Roaring Brook Township. (Doc. No. 91). Defendant George C. Murphy, a Pennsylvania State Police Trooper, was on general patrol in the same area. *id.* Trooper Murphy has been with the State Police since 1999 and worked for the interdiction unit. As part of his duties he patrolled roads, enforces safety regulations, and monitors for speeding and moving violations. (Doc. No. 91). During his years as a State Trooper, he has made hundreds of drug arrests and has extensive training and in-field experience on the movement of drugs, weapons, and other contraband over the highway system. *id*.

Trooper Murphy saw the plaintiff's vehicle and pulled over it over for a tinted window violation, as the rear windshield and rear passenger windows were improperly tinted. *id*. The relevant statute prohibits operating "any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing, or side window of the vehicle." 75 Pa. C.S.A. §4525(e)(1). When Trooper Murphy approached the car he noted the plaintiff had a freshly lit cigarette and there were numerous air fresheners hanging from the gear shifter, a method commonly used to mask the smell of drugs or alcohol. (Doc. No. 91). The plaintiff's hands also shook uncontrollably when he handed over

---

[2]The plaintiff did file a "declaration," urging Judge Schwab to review a video tape of the K-9 sniff, (Doc. No. 76), and also claiming the defendants were untruthful in their statements. (Doc. No. 86). The video and the defendant's depositions were reviewed by Judge Schwab as part of the summary judgment report and recommendation. (Doc. No. 91) Local Rule 56.1 reads, "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." The plaintiff's deposition was further reviewed by this court.

his vehicle's documentation. *id*. Trooper Murphy discovered the plaintiff had a suspended license and he was driving his fiance's car. Trooper Murphy knows driving a third party's car to be consistent with a drug running operation. *id*. The trooper also noted there was a set of red, white, and black beads on the gear shifter and the plaintiff had the number "59" tattooed on his arm. These colors and signs were consistent with membership in the 59th Street Bloods gang from New York City. *Id*. When he asked the plaintiff if he was involved with that gang, the plaintiff acknowledged he was at one time. (Doc. No. 74, Exh. B) When asked where he was going, the plaintiff responded that he was going from his wife's house in the Poconos to his home in Wilkes-Barre, however, his home address on his Pennsylvania identification card indicated he lived in the Poconos. *id.* Trooper Murphy ultimately cited the plaintiff for the tinted window violation and driving with a suspended license. (Doc. No. 91).

The plaintiff was ordered to exit the vehicle and did so, locking his keys inside, another tactic Trooper Murphy knows is consistent with concealing drug transportation and hindering police investigations. (Doc. No. 74, Exh. B). After telling the plaintiff he was free to go, Trooper Murphy asked if he could search the vehicle, but the plaintiff refused. *id.* He then told the plaintiff he was going to detain his car for a K-9 sniff based on the plaintiff's actions and gang affiliations. *id.* When the plaintiff's fiancé arrived, she also refused to consent to a search of the car, claiming she had an attorney on the phone who said the car should be turned over to her custody. *id.* Trooper Murphy knows this to be a common technique used to deter police searches of vehicles suspected of carrying contraband. *id.*

Defendant Jason Dubernas, an Old Forge police officer, arrived with his narcotics-sniffing dog, Enzo, a short time later. (Doc. No. 91). Enzo completed a six-month training course to become certified in detecting drugs by smell in

3

2003-2004. *id.* Officer Dubernas also continues to train Enzo on a weekly basis. *id.* Enzo has been taught to bite, scratch, paw, or jump when he detects drugs. *id.* A video was taken of Enzo searching the car. *id.* In the video, Officer Dubernas indicates to the locations he wants Enzo to sniff and then waits for Enzo to complete his check. *id.* Enzo indicated he smelled drugs on the driver side door of the car, jumping up on the door and remaining there for a period of time. (Doc. No. 91).

Based on the plaintiff's actions, the officers' observations, and the K-9 indication of narcotics, the car was impounded by police. The police subsequently applied for and received a search warrant on May 18, 2010. *id.* Trooper Murphy executed the search and found a WD-40 container with heroin, ecstacy, crack cocaine, and marijuana inside that all tested positive for the respective controlled substances. *id.* A loaded .380 caliber weapon was also found in the engine compartment of the car. *id.* The plaintiff was arrested by other officers and numerous charges relating to the drugs and weapons were filed against him. *id.* The plaintiff moved to suppress the evidence seized from his vehicle, but that motion was denied. *id.* He was eventually acquitted after a bench trial. (Doc. No. 91).

## II.    PROCEDURAL HISTORY

The plaintiff filed his initial complaint against the defendants in their individual and official capacities on August 24, 2011, alleging the defendants violated his Fourth Amendment rights through the traffic stop, canine sniff, vehicle detainment, impoundment, and search, and his eventual arrest on drugs and weapons charges. (Doc. No. 1). Subsequently, a motion to dismiss was granted as to the claim requesting monetary damages from the defendants in their official capacity and any claim arising from the canine sniff itself. (Doc. No. 50). The remaining claims relate to the initial stop of

defendant's car, the impoundment of the car, the search of the vehicle pursuant to a warrant, and the eventual arrest. (Doc. No. 91). Both defendants filed motions for summary judgment pursuant to Fed. R. Civ. Pro. Rule 56. (Doc. Nos. 69 & 73). Judge Schwab filed a report and recommendation on August 14, 2013, (Doc. No. 91), and the plaintiff filed his objections on September 6, 2013.[3] (Doc. No. 97)**.**

## III. STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and

---

[3]The plaintiff initially filed a Notice of Appeal, attempting to appeal the report and recommendation to the United States Court of Appeals for the Third Circuit, however, as a report and recommendation is not a final judgment, this court granted the plaintiff additional time to file his objections pursuant to Local Rule 72.3. (Doc. No. 95).

recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

## IV. DISCUSSION

As an initial matter, it is important to note that this court is required to liberally construe a pro se plaintiff's pleadings; "however inartfully pleaded," the "allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). In doing so, the court is to "apply the applicable law irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 687 (3d Cir. 2002). Nevertheless, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v.

Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

The plaintiff challenges the report and recommendation on five grounds: (1) the initial stop of the car was not supported by reasonable suspicion; (2) the detention of the vehicle was not supported by reasonable suspicion or probable cause; (3) the search of the vehicle, conducted pursuant to a search warrant, was not supported by probable cause; (4) the arrest of the plaintiff

7

was not supported by probable cause; and (5) the defendants are not entitled to qualified immunity. (Doc. No. 97).

As an initial matter, Judge Schwab determined the plaintiff's claims are not barred by collateral estoppel.[4] The defendants contend that because the plaintiff was unsuccessful in his motion to suppress in, his claims are barred. The Magistrate Judge applied Pennsylvania law, noting there are four elements required for collateral estoppel:

> (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party. . . to the prior action; (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action.

*James v. Heritage Valley Federal Credit Union*, 197 F. Appx. 102, 105 (3d Cir. 2006)(quoting *Walker v. Horn,* 385 F.3d 321, 337 (3d Cir. 2004)). Focusing on the fourth element, the plaintiff was acquitted after a bench trial, so had neither any reason or opportunity to appeal the motion to suppress ruling. *See Commonwealth v. Dellisanti,* 831 A.3d 1159, 1163 fn. 7 (noting successful party in a criminal case may not appeal trial court proceedings) *rev'd on other grounds*, 876 A.2d 366 (Pa. 2005). As "the ability to appeal an adverse ruling is indispensable to a finding that there existed a full opportunity to litigate the issue," collateral estoppel cannot be invoked when the plaintiff did not have the right to appeal the suppression ruling. *James*, 197 F. Appx. at 106. Collateral estoppel is not available to the defendant in this case.

Turning now to the plaintiff's contentions, he first argues that the initial stop was not justified by reasonable suspicion. A "traffic stop will be deemed a reasonable seizure when an objective review of the facts shows that an

---

[4]Neither party objects to this recommendation and finding, but in the interest of thoroughness and completeness, this court will briefly touch on the issue.

8

officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *U.S. v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). Plaintiff's own objection admits his rear windshield and his two back windows were tinted, but claims that because Trooper Murphy could see inside of the car, he was not justified in pulling him over. (Doc. No. 97). The statute prohibits screening material "which does not permit a person to see or view the inside of the vehicle *through* the windshield, side wind, or side window of the vehicle." Pa. C.S.A. §4525(e)(1) (emphasis added). There is no dispute that the plaintiff's windows were tinted, therefore, Trooper Murphy had reasonable suspicion to pull him over to investigate whether the windows were so tinted as to prevent a person from looking through them. *See U.S. v. Kennedy*, 434 F.Appx. 51, 53 (finding reasonable suspicion sufficient to pull over a vehicle where officer noted defendant's car "appeared to have excessive tint on its windows").

Next, the plaintiff argues the detention of the vehicle was not proper and not supported by reasonable suspicion or probable cause. Given that the claim related to the actual K-9 sniff itself has been dismissed, this court will construe the objection as a challenge to whether the detention prior to the K-9's arrival was unsupported by reasonable suspicion. Judge Schwab made the same determination in the report and recommendation. The plaintiff correctly argues that once he was issued a citation for the excessively tinted windows and driving with a suspended license, the officer could not longer detain him for those violations, unless Trooper Murphy had reasonable and articulable suspicion of some other criminal wrongdoing justifying a detention of the vehicle. (Doc. No. 97)

"After a [valid] traffic stop . . . an officer who develops reasonable, articulable suspicion of criminal activity my expand the scope and inquiry beyond the reason for the stop and detain the vehicle and its occupants for

9

further investigation." *U.S. v. Givan,* 320 F.3d 452, 458 (3d Cir. 2003). At the time Trooper Murphy called for the K-9 unit and held the vehicle, his observations gave him sufficient reasonable suspicion to order the sniff and detain the vehicle based upon: (1) the plaintiff lit a fresh cigarette at the initiation of the traffic stop and had a bunch of air fresheners on his gear shifter, actions consistent with concealing the smell of drugs or alcohol; (2) the plaintiff claimed he was going to his home in Wilkes-Barre, but his identification listed his address as in the Poconos; (3) the car belonged to a third party, an action consistent with drug transportation; (4) the plaintiff's license was suspended; (5) at times the plaintiff shook uncontrollably during his interaction with Trooper Murphy, indicating nervousness; (6) the plaintiff admitted to being a former member of the 59th Street Bloods, a gang out of New York City; and (7) the plaintiff locked his keys in his car, an action consistent with hindering police searches and investigation of vehicles transporting drugs. *See Id.* at 459-60 (holding officer had reasonable suspicion to extend traffic stop based on traffic violation, driving a rental car, the route defendant was traveling is known for drug transportation, the defendant's nervous behavior, and inconsistent statements made by the driver and passengers). Given these observations, Trooper Murphy had sufficient reasonable suspicion to hold the car for the K-9 to arrive.

The plaintiff further contends the search of the vehicle was not valid. Although the plaintiff directly challenges whether Enzo actually detected drugs in the car, this court and Judge Schwab view this argument as a challenge to the search conducted pursuant to a warrant based, in part, upon the K-9's alert to officers. It is well-established that, "looking at the totality of the circumstances, a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant." *U.S. v. Pierce,* 622 F.3d 209, 210 (3d Cir. 2010). As

10

previously discussed, Trooper Murphy's observations and experience were sufficient to detain the vehicle.

It is undisputed that Enzo was trained in narcotics detection and that Officer Dubernas continually worked with the K-9 to ensure he had sufficient practice in smelling drugs. Enzo was also specifically taught to indicate a positive hit for drugs by jumping, scratching, or pawing at the area. Enzo communicated that he had found drugs by jumping onto the driver's side door as trained, giving the officers probable cause to search the vehicle, even without a warrant. *Id.*

However, the officers first obtained a search warrant from a Pennsylvania magisterial district judge prior to initiating the search. In order to challenge a warrant, a "defendant must first (1) make a substantial preliminary showing that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit and (2) demonstrate that the false statement or omitted facts are necessary to the finding of probable cause." *U.S. v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) (quotations and citations omitted). Trooper Murphy applied for the warrant and it was issued on May 18, 2010. In the warrant, Trooper Murphy discussed the positive hit by Enzo in a single paragraph, noting "Enzo had a positive identification for the presents (*sic*) of narcotics emanating from the vehicle." (Doc. No. 74, Exh. A-3) The plaintiff claims the video of the incident is evidence of a false statement or omission, alleging that the dog was not indicating drugs, but was signaling to any place that Dubernas pointed. Judge Schwab viewed the video as did the undersigned, and even in the light most favorable to the plaintiff, this argument fails to raise a genuine issue of fact regarding the alert. In the report and recommendation, the video is described as showing "Enzo briefly jumping up on the car at various points and up on his hind legs at the driver's side door for a longer period of time." (Doc. No. 91). This is consistent with

how Enzo alerts to smelling narcotics and is directly in line with the language of the affidavit in support of the search warrant. The plaintiff claims his observations of other K-9 drug sniffs is sufficient to raise a question of fact, but fails to present any evidence that would demonstrate how Enzo was improperly trained or how the alerts were invalid based on that training. As such, there is no genuine issue of fact in dispute regarding the K-9 sniff. (Doc. No. 74, Exh. B) *See U.S. v. Bradley*, 453 F.Appx. 142, 144 (noting alert by trained drug dog "can establish probable cause and that, in this case, the dog and his handler had more than adequate training to support the probable cause necessary to obtain a search warrant").

Next, the plaintiff claims his arrest was not supported by probable cause because the officers knew he had no knowledge of the drugs in the car and because there was no physical evidence, such as fingerprints, linking him to the drugs or the gun. (Doc. No. 97) "Generally, the question of probable cause in a section 1983 damage suit is one for the jury . . . [h]owever, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed in the light most favorable to the Plaintiff, reasonably would not support" a finding in the plaintiff's favor. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000). "Probable cause to arrest exists when the facts and circumstances within the arresting officers' knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)(quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). The plaintiff points to evidence, or lack thereof, tending to show he was not connected with the drugs. However, such information relates more to the "specific evidence of each element of the offense . . . needed to support a conviction," not the significantly lower standard of probable cause. *Wright v. City of Philadelphia,*

12

409 F.3d 595, 602 (3d Cir. 2005)(citations omitted).

The search of the vehicle revealed a can of WD-40 with a false bottom under the plaintiff's jacket on the front passenger side of the car. (Doc. No. 74, Exh. A-5). Inside that can was heroin, ecstacy, crack cocaine, and marijuana, all of which tested positive for their respective substances. *id.* A firearm was found in the engine compartment of the car. *id.* The discovery of the contraband in the passenger compartment under the plaintiff's jacket, combined with Trooper Murphy's observations of the plaintiff, provided probable cause to arrest him for violations of the controlled substance laws of Pennsylvania. *See U.S. v. Hudson*, 346 F. Appx. 903, 905-6 (3d Cir. 2009)("[O]fficers, who had substantial experience with drug-related arrests, glimpsed multiple marked plastic baggies containing a white chunky substance in the center cup holder, they possessed probable cause to believe the baggies contained illegal drugs, and that [the defendant] was involved in criminal activity."). Given there are no material facts in dispute related to the initial stop, the detainment of the vehicle, the search of the vehicle, and the plaintiff's arrest, this court will grant the motion for summary judgment.

Finally, Judge Schwab determined there were alternative grounds for finding in favor of the defendants. Specifically, that they are entitled to qualified immunity. The plaintiff, again citing solely the video of the K-9 sniff, claims that qualified immunity does not apply. (Doc. No. 97). The two pronged test for whether qualified immunity applies requires this court to determine (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010)(quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). Given the discussion of the plaintiff's contentions above, this court has determined that the plaintiff has failed to make out a

13

violation of a constitutional right. There was reasonable suspicion supporting the stop and subsequent detention of the vehicle, and probable cause to search the vehicle and arrest the plaintiff.

Even if the plaintiff had made out such a violation, unless a determination is made that "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted," qualified immunity would also bar the claim. *Id.* at 251. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (quoting *Bayer v. Monroe County Children and Youth Serv.*, 577 F.3d 186, 193 (3d Cir. 2009)). Here, the officers were justified in pulling over the vehicle for the tinted window violation, detaining the vehicle for a dog sniff based on the officer's observations, training, and experience, and searching the car based on a valid search warrant after a properly-trained drug detecting dog indicated there were narcotics in the car. Once drugs were found on the front passenger side, under the plaintiff's jacket, they had probable cause to arrest the plaintiff. For those reasons, qualified immunity acts as a further bar to the plaintiff's claims.

## V. CONCLUSION

After a *de novo* review, this court agrees with Judge Schwab's report and recommendation that the plaintiff has failed to demonstrate a genuine issue of material fact. Therefore, the defendants' motions for summary judgment will be **GRANTED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 30, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-1584-01.wpd